620 A.2d 654

AQUA–LIFE, INC., trading under the name
of Limestone Springs, Petitioner,

v.

PENNSYLVANIA GAME COMMISSION, Respondent.

Commonwealth Court of Pennsylvania.

Argued Nov. 16, 1992.

Decided Jan. 28, 1993.

Douglas Foster, for petitioner.

William R. Pouse, Chief Counsel, for respondent.

Before PALLADINO and PELLEGRINI, JJ., and SILVESTRI, Senior Judge.

PALLADINO, Judge.

Aqua–Life, Inc. (Petitioner) filed in our original jurisdiction[1] a petition for review in the nature of a declaratory judgment challenging the refusal of the Pennsylvania Game Commission (Commission) to approve a depredation permit. Petitioner now seeks summary judgment. We deny the motion for summary judgment.

Petitioner is a Pennsylvania corporation engaged in the business of raising and selling fish, commonly referred to as "fish-farming" or "aquaculture." The fish are raised in artificial ponds and "runs" or "raceways" on Petitioner's premises.

Petitioner claims that large numbers of Great Blue Heron birds and Black Crowned Night Heron birds (Herons) are feeding on Petitioner's fish and causing significant losses to the business. Petitioner wishes to obtain a depredation permit to hunt and kill a small number of Herons. Because both the Great Blue Heron and the Black Crowned Night Heron are migratory birds, both federal and state government ap-

---

1. Pursuant to Section 761(a) of the Judicial Code, 42 Pa.C.S. § 761(a), which states:
 (a) General Rule.—The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:
 (1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, except: ...

proval is required before a depredation permit will issue.[2]

Petitioner applied to the United States Fish and Wildlife Service, in September 1987 and October 1988, for a depredation permit to kill a specified number of Black Crowned Night Herons and Great Blue Herons. The United States Fish and Wildlife Service recommended the issuance of a permit and forwarded the permits to the Pennsylvania Game Commission (Commission) for final approval, pursuant to 34 Pa.C.S. § 2902. The Commission refused to approve either permit, prompting Petitioner to file this action.

Petitioner has filed a motion for summary judgment requesting that the Commission's refusal to issue the permit be found arbitrary, capricious and unlawful, and to compel the Commission to issue a depredation permit, enabling Petitioner to legally shoot and kill a specified number of Great Blue Heron and Black Crowned Night Heron birds.

 Pursuant to Pa.R.C.P. Rule 1035, a motion for summary judgment will be granted only when, after examining the record in the light most favorable to the non-moving party, there exists no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See also Grim v. Borough of Boyertown*, 141 Pa.Commonwealth Ct. 427, 595 A.2d 775 (1991). In ruling on a motion for summary judgment, a court must consider not only the pleadings but other documents of record, such as affidavits and exhibits. *Council 13, AFSCME by Keller v. Commonwealth of Pennsylvania*, 108 Pa.Commonwealth Ct. 155, 529 A.2d 1143 (1987). A motion for summary judgment may not be granted if pleadings, depositions, answers to interrogatories and admissions show that there is a genuine issue as to a material fact. *Falls Township v. Police Association of Falls Township*, 134 Pa.Commonwealth Ct. 255, 579 A.2d 430 (1990).

Petitioner contends that no genuine issue of material fact exists, that the Commission has violated Section 2121 of the Game and Wildlife Code, 34 Pa.C.S. § 2121,[3] by refusing to

2. The Herons are protected under 16 U.S.C. § 703 and Section 102 of the Game and Wildlife Code, 34 Pa.C.S. § 102.

3. Section 2121 states in pertinent part:

approve the issuance of the permit, and that this refusal is arbitrary and capricious. Petitioner further argues that he is being deprived of his rights to protect his property enunciated in Article I, Section I of the Pennsylvania State Constitution.

The Commission contends that material issues of fact remain unresolved, and therefore, summary judgment would be, inappropriate at this time.

Both parties have submitted interrogatories, depositions and affidavits to support their claims.

Petitioner's claim, as to the amount of fish lost, is not consistent. In Petitioner's pleadings the fish loss is estimated at 33%, while in an affidavit filed on Petitioner's behalf the loss in estimated as 40% to 70%. Additionally, the loss of fish in actual numbers is estimated at 750,000 fish annually, but again, this number varies greatly between Petitioner's answers to interrogatories and affidavits. The Commission disputes these numbers, and questions Petitioner's "low" 3.2% loss of fish, due to disease and incidental mortality.

The Commission points out that other birds live in the same area, including over 200 Common Grackle, and questions whether killing a small number of Herons would be an effective solution to Petitioner's problem of claimed fish loss. The Petitioner counters this argument with the "Alpha" theory, that proposes that the killing of certain lead birds of a flock would effectively deter the flocks from feeding at Petitioner's business. The Commission claims there are no scientific findings to support this theory, and therefore, raises yet another genuine issue as to a material fact.

The Commission claims that other non-lethal methods are available to reduce the Heron population or protect Petitioner's fish. One method is the hanging of netting over the ponds and raceways. Petitioner claims this method is cost

(a) General Rule.—Subject to any limitations in this subchapter, nothing in this title shall be construed to prohibit any person from killing any game or wildlife:

\* \* \* \* \* \*

(2) anywhere on the property under the person's control, including detached lands being cultivated for the same or similar purposes, immediately following such destruction: or . . . .

prohibitive and gives a figure of $600,000 to construct such netting. The Commission counters, with a $40,000 figure for the construction of such a barrier which was erected at another fish-farm and claims that the nets have been highly successful. Petitioner also submits that other alternative methods are either being used, have been used to no avail or are cost prohibitive.

It is obvious that factual issues exist between the two parties and therefore, summary judgment is inappropriate. A determination of whether the Commission acted arbitrarily, capriciously or unlawfully cannot be made until these factual issues are resolved. We hold that genuine issues of material fact exist which preclude a grant of Petitioner's motion for summary judgment.

Accordingly, the motion for summary judgment is denied.[4]

## ORDER

AND NOW, January 28, 1993, the application for summary judgment in the above-captioned matter is hereby denied.

---

4. *The Commission filed motions to strike affidavits filed by Petitioner in support of its motion for summary judgment. Our disposition of the motion for summary judgment makes unnecessary disposition of the motions to strike.*